McKNIGHT v. McKNIGHT.

4-6896   166 S. W. 2d 674

Opinion delivered December 14, 1942.

*W. M. Walls* and *W. D. Davenport,* for appellant.

*Rowland H. Lindsey* and *Gordon Armitage,* for appellee.

McHANEY, J.   J. L. McKnight died testate in White county, Arkansas, on December 7, 1939. He left surviving him appellant, his brother, and appellees, his widow and children, being all his heirs at law. His will, which named his widow, Maggie, executrix and sole beneficiary, was probated April 6, 1940. She was appointed and qualified as such and she and all the heirs at law, appellees, brought this action against appellant to recover the value of a stock of general merchandise formerly owned by J. L. McKnight and which had been sold by appellant for $7,000. Also the action sought to recover the title to lot 7, block 20, Russell, Arkansas, on which the store building was situated, and lot 1 and west half of lot 10, block 21, Russell, on which a residence was situated, for rents on the two buildings and

6

for profits alleged in the operation of the mercantile business with interest and an accounting.

Appellees contend that in 1918 J. L. McKnight was operating a store in the village of Russell with two partners, E. W. Patterson and Joe Moore, under the firm name of J. L. McKnight & Co.; that he employed appellant, his brother, to work in the store, after the latter had failed in a similar business at Bradford, Arkansas; that in 1920 J. L. McKnight bought out the interest of his partners, Patterson and Moore, who on June 8, 1940, executed to either J. L. McKnight or to J. L. McKnight & Co. a warranty deed to said lot 7, block 20, on which the store was operated, and was thereafter the sole owner of said store and property; that he continued to operate the store as owner and manager until 1929, when he suffered a stroke of paralysis, at which time he turned the management thereof over to appellant who continued to operate it as an employee until 1941, when the store was sold for $7,000; and that after the death of J. L. McKnight in 1939, appellant gave notice to appellees that the store and real property belonged to him.

Appellant contends that he became the sole owner of the store and said lot 7, block 20 on June 8, 1920, and has, since that time, operated it as his own business.

The learned trial court did not accept either contention, but found that J. L. and C. L. McKnight were partners from 1929 to the death of J. L. in 1939 and that the latter should account to appellees for one-half the proceeds of the sale of the mercantile business and one-half of the real property, but did not take into consideration the profits of the business from 1929 to March 1, 1941. A decree was entered accordingly.

There is here an appeal and cross-appeal.

In so holding we think the court fell into error. Both parties to this law suit denied the existence of a partnership at any time between J. L. and C. L. McKnight and we do not find any substantial evidence in the record to support the finding. We are of the opinion that appellant originally became an employee of the

partnership of E. E. Patterson, Joe Moore and J. L. McKnight under the name of J. L. McKnight & Co.; that, on June 8, 1920, said J. L. McKnight bought out the interest of his partners, both in the store and in the real estate occupied by the store; that they, Patterson and Moore, together with their respective wives conveyed, by warranty deed, said lot 7, block 20, Town of Russell, to J. L. McKnight or to J. L. McKnight & Co.; that said deed has been in the exclusive possession of appellant or under his control from the time of its execution and delivery to the present time without being filed for record and recorded; and that, as originally executed and delivered, J. L. McKnight was the grantee in said deed, but that it has been fraudulently changed and altered by appellant so as to make J. L. McKnight a grantor, with Patterson and Moore, and "McKnight & Co." the grantee, the latter being the trade name under which appellant undertook to operate the business after he conceived the idea of defrauding his brother and appellees of their property. In other words, said deed was altered so as to have the three original partners convey to him said property and at the same time he was the notary who took the acknowledgments of grantors and their wives. The deed was typewritten and the changes were crudely made by striking out with x's the word "and" between Patterson and Moore in the granting clause and inserting with a typewriter with a different color of ribbon the words "J. L. McKnight" after the names of the other grantors, and the insertion is not in line with the other names. The consideration named was $925 cash in hand paid by J. L. McKnight & Co. but it was changed by striking out with x's the initials "J. L." Other crude changes were made, for instance, in the clause releasing dower and homestead of the wives. As originally written, Mrs. Patterson and Mrs. Moore were properly written in the blank space provided therefor, but after Mrs. Moore's name there was inserted "and J. L. McKnight" and the clause then reads, "wife of the said E. E. Patterson, Joe Moore and J. L. McKnight," so that it made J. L. McKnight the wife of

J. L. McKnight. The names of J. L. McKnight and Maggie McKnight were signed on the deed, but Maggie McKnight testified positively that she did not sign the deed and did not acknowledge the same, and a comparison of the signature of J. L. McKnight on the deed with his admitted signature shows that it is not his signature, but is a forgery; and the certificate of appellant as notary, that J. L. and Maggie McKnight appeared before him and acknowledged the execution of the deed, is entitled to no consideration and is of no weight, since he was at the same time the grantee therein.

There also appears in the record the warranty deed of Grover McNatt and wife, dated March 1, 1934, conveying to J. L. McKnight & Co. the west part of lot 7, block 20, for a consideration of $50, and acknowledged before S. J. Binning, notary public. This deed covered a part of the store property. It has been in the exclusive possession of appellant since its execution and delivery and, like the other deed above mentioned, has never been recorded, but, by order of the probate court, it and the other deed above mentioned were deposited with the clerk of said court with other papers in his possession pertaining to said estate. This McNatt deed has also been changed and altered so as to show that C. L. McKnight & Co. is the grantee. The notary who took the acknowledgment of the McNatts testified the conveyance was to J. L. McKnight & Co., and that the deed had been changed without his knowledge or consent.

There is also in the record an instrument purporting to be an assignment of ''all my interest in store'' by J. L. McKnight to C. L. McKnight, dated February, 1932. It is written on the back of a letter from Bald Knob State Bank to J. L. McKnight & Co., dated October 29, 1930. Aside from the fact that it imports no consideration, it appears to be a forgery, as a comparison of the signature with his genuine signature shows. It was witnessed first by C. L. McKnight whose name has been marked out and the name of a relative now dead was added.

The trial court found, in effect, that these deeds and said assignment were forgeries, because full effect was not given them. We agree that they were forgeries and were not effective for any purpose. We, therefore, hold that appellant acquired no interest in said lot 7, block 20, of the town of Russell, Arkansas, and no interest in the mercantile business operated by J. L. McKnight & Co. He made no claim to said property during the lifetime of J. L. McKnight, who was not physically active in the management of the business after his first stroke of paralysis in 1929, and who was incapacitated to transact any business after his second stroke in 1937, but waited until after death had made it impossible for his brother to dispute his spurious claim to notify appellees that all said property was his. He kept the altered deeds off the record until all the original parties to the deed of June 8, 1920, were dead and could not contradict him in claiming that he had purchased all the property at that time and that said deed was intended to convey same to him. He has no standing in a court of equity. If he purchased all the property in 1920, why was it necessary to get the assignment of the store in 1932?

Another piece of real property is involved, referred to as the Minnie Jones property, described as lot 1 and west half of lot 10, block 21, town of Russell, a residence property near the store. We think the evidence conclusively shows that this property belongs to appellees. Appellant has been living in this residence for a number of years and should be charged with its rental value.

We are also of the opinion that appellant should be required to render an accounting of his stewardship—of his management of the business—and that he should have been required to disclose what property he has accumulated during the years he has been managing said properties, including the government bonds he owns, but the amount of which he refused to disclose, and the source of the funds by which such property was acquired.

The decree will be reversed and remanded with directions to enter a decree, cancelling all deeds under which appellant claims title to the real property here involved,

and vesting same in appellees; to render a judgment against him for the fair rental value of the residence property in Russell, Arkansas, for the time it has been occupied by him and the store building since March 1, 1941, with six per cent. interest; to render a judgment against him for $7,000, the sale price of the stock of merchandise, with six per cent. interest from March 1, 1941; and, if appellees are so advised, to require an accounting of the management of said business by him and a disclosure of his assets and the source of the funds by which they were acquired.

It is so ordered.